Argued and submitted December 22, 2021; judgment of conviction on Count 1 reversed and remanded, remanded for resentencing, otherwise affirmed April 13; petition for review denied September 1, 2022 (370 Or 212)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEMEATRICE JEAN FARR,
*Defendant-Appellant.*

Clackamas County Circuit Court
19CR35257; A172754

509 P3d 165

In this criminal case, defendant appeals from a judgment convicting him of attempted burglary in the first degree (Count 1), criminal mischief in the first degree (Count 2), and fleeing or attempting to elude a police officer (Count 3). Defendant raises six assignments of error, arguing that the trial court erred by (1) allowing the victim to testify over defendant's hearsay objections to the repair and replacement costs of a door; (2) denying defendant's motion for a judgment of acquittal on the first-degree criminal mischief charge; (3) accepting a nonunanimous verdict on Count 1; (4) instructing the jury that it could reach nonunanimous verdicts; (5) ordering restitution for damage to a patrol car because the damage was not reasonably foreseeable; and (6) imposing $276 in attorney fees without first determining defendant's ability to pay. The state concedes the third and sixth assignments of error and disputes the remaining assignments of error. *Held*: The disputed testimony was not hearsay; rather, the testimony was direct evidence of the market value of the repair and replacement costs of the door. Therefore, the trial court did not err in overruling defendant's hearsay objections and in denying his motion for judgment of acquittal on the first-degree criminal mischief charge. Further, the Court of Appeals accepted the state's concession as to the nonunanimous guilty verdict on Count 1, and exercised its discretion to correct the error. Given that disposition, the court did not reach the state's concession on the imposition of attorney fees and rejected defendant's fifth assignment of error without written discussion.

Judgment of conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

Kathie F. Steele, Judge.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Judgment of conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment convicting him of attempted burglary in the first degree (Count 1), criminal mischief in the first degree (Count 2), and fleeing or attempting to elude a police officer (Count 3). Defendant raises six assignments of error, arguing that the trial court erred by (1) allowing the victim to testify over defendant's hearsay objections to the repair and replacement costs of a door; (2) denying defendant's motion for a judgment of acquittal on the first-degree criminal mischief charge; (3) accepting a nonunanimous verdict on Count 1; (4) instructing the jury that it could reach nonunanimous verdicts; (5) ordering restitution for damage to a patrol car because the damage was not reasonably foreseeable; and (6) imposing $276 in attorney fees without first determining defendant's ability to pay. We write to address defendant's first two assignments of error concerning the victim's testimony about the amount of damage caused by defendant and conclude that the trial court did not err because the challenged evidence was not hearsay. Further, we accept the state's concession with respect to the nonunanimous guilty verdict that the trial court received and, given that disposition, we need not reach the state's concession on the imposition of attorney fees. We reject defendant's fifth assignment of error without written discussion. Accordingly, we reverse and remand Count 1, remand for resentencing, and otherwise affirm.

We begin with defendant's first two assignments of error challenging the trial court's hearsay ruling and denial of a motion for judgment of acquittal on the first-degree criminal mischief charge. We review a trial court's decision to admit testimony over a hearsay objection for legal error. *State v. Hixson*, 307 Or App 333, 335, 476 P3d 977 (2020). We review the denial of a motion for judgment of acquittal by examining the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element[s] of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

The facts are not in dispute. Around 1:00 a.m., defendant and another individual attempted to kick in the victim's front door resulting in damage to the door and door-jamb. The victim received an alert from his security system and heard something being dragged from the back of the house. The victim called police and later discovered damage to his barbeque in addition to the damage to the front door.

When the police arrived, they saw an SUV leave the victim's neighborhood and run a stop sign. Deputy McCluskey turned on her overhead lights and siren and followed the SUV, which was driven by defendant. After defendant drove for about a mile or about a minute and 20 seconds without pulling over, McCluskey attempted to initiate a pursuit intervention technique (PIT) maneuver. The PIT maneuver did not go as planned but did eventually cause defendant's SUV to stop.

Defendant was charged with attempted first-degree burglary, first-degree criminal mischief, and fleeing or attempting to elude a police officer. As part of the criminal mischief charge, the state had to prove that defendant intentionally damaged the property of another in an amount exceeding $1,000. ORS 164.365. At trial, the victim testified that he went to Lowe's to determine how much it would cost to repair the damage to his front door. The victim explained that he received three proposed solutions from someone at Lowe's and received three quotes. Over defendant's multiple hearsay objections, the trial court allowed the victim to testify as to the cost of replacing the door and doorjamb:

"[Prosecutor]:   Can you describe the damage sustained to the door and the doorjamb to the jury?

"[Victim]:   Yeah. The—the doorjamb on the lock side was—was cracked. And also the door around the dead bolt was cracked also.

"[Prosecutor]:   Did you get any quotes to determine what the repair or replace—

"[Defense Counsel]:   I'm going to object. It's hearsay, Your Honor.

"[Trial Court]:   You should be heard, Counsel.

"[Prosecutor]: Your Honor, it goes to the—I mean, it's the witness's own knowledge and the effect that it has on him to be able to provide an estimate to what the damage is to his own property.

"[Trial Court]: You can ask him if he got estimates.

"* * * * *

"You can't ask him what the estimates said."

The state acknowledged the court's ruling and asked the victim how he got estimates and how many estimates he received. The state then returned to the value of the damage:

"[Prosecutor]: Okay. And based on all of that information, as the homeowner, what is your expected cost to replace or to repair the door?

"[Defense Counsel]: Objection. Hearsay, Your Honor.

"[Trial Court]: Do you wish to be heard further?

"[Prosecutor]: I do. He's the homeowner. He's able to testify about what he expect[s] the cost to replace his own door."

At that point, the parties approached the bench and had a sidebar conference off the record. Ultimately, the trial court sustained the objection:

"[Trial Court]: I sustain the form of this question. You can rephrase, Counsel.

"[Prosecutor]: Okay. So [you] had indicated that you received estimates?

"[Victim]: Yes.

"* * * * *

"[Prosecutor]: Okay. Based on all of that information, as the homeowner and not specific quotes that you received, but what's the estimated damage or replace value to replace [the door]?

"[Defense Counsel]: I'm going to object. It's hearsay again, Your Honor.

"[Trial Court]: Sustain.

"* * * * *

"[Prosecutor]:   Not specifically what anyone has told you about the total cost, but what is, as the homeowner, what is your understanding of what it would cost to replace the doorjamb and door?

"[Defense Counsel]:   Your Honor, that's still hearsay.

"[Prosecutor]:   He's the homeowner. He can talk about how much it cost to repair damage to his own home.

"[Trial Court]:   Do you wish to be heard further?

"[Defense Counsel]:   Your Honor, I think it's a matter better discussed—

"[Trial Court]:   Counsel, to the extent that it includes not only—not only estimates that he received, but also what he did on his own at Lowe's.

"Okay. I'm going to allow him to testify about that. So your objection is overruled.

"[Defense Counsel]:   Thank you.

"[Trial Court]:   Go on. Can you answer the question?

"[Victim]: Yes. So the—the proposed three doors ranged from $1,100 to $1,500 just for the door and the jamb, not including labor."

After the state's remaining witnesses testified, defendant moved for a judgment of acquittal on the attempted burglary charge and the criminal mischief charge. With respect to the criminal mischief charge, defendant argued that the trial court should enter a judgment of acquittal as to that count and let the state go forward only on second-degree criminal mischief because the damage estimate was supported only by the victim's testimony. The trial court denied defendant's motions. Ultimately, defendant was convicted of all counts: the jury found defendant guilty by a nonunanimous verdict of attempted first-degree burglary and by unanimous verdicts on the remaining two counts.

On appeal, defendant argues that the trial court erred by allowing the victim to testify to the repair cost of the door, and in turn erred by denying his motion for a judgment of acquittal for first-degree criminal mischief. Specifically, defendant asserts that the victim's repair estimate for the door "was either a direct recitation of or derived from what

the guys at Lowe's told him it would cost to repair the door." Defendant contends that, because the victim's testimony was offered to establish that defendant caused more than $1,000 of damage, the challenged testimony was hearsay. Defendant argues that "[i]f the state wanted to introduce a repair estimate, it should have called the Lowe's employees who provided it to testify and face cross-examination." In response, the state first argues that defendant's evidentiary challenge is inadequately preserved "because defendant did not object, but appeared to acquiesce, after the trial court clarified the scope of the victim's testimony." Alternatively, the state remonstrates that defendant's argument fails on the merits because the victim's testimony was not hearsay. Relying on our decision in *State v. Pulver*, 194 Or App 423, 95 P3d 250, *rev den*, 337 Or 669 (2004), the state asserts that, "if the victim's testimony about the cost of replacement doors was based on the victim's own observations of the prices that Lowe's charged for those doors, rather than what someone else told him, his testimony would not be hearsay but direct evidence of market value." Finally, the state contends that the "record reflects the trial court's binding finding of preliminary fact that the victim testified from his own knowledge about the doors' prices, not what someone else told him." We reject the state's preservation argument without discussion and conclude, as explained below, that the victim's testimony was not hearsay.

Generally stated, hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. *See* OEC 801(3) (defining hearsay); *Morgan v. Valley Property and Casualty Ins. Co.*, 289 Or App 454, 460, 410 P3d 327 (2017), *adh'd to on recons*, 290 Or App 595, 415 P3d 1165, *rev den*, 363 Or 390 (2018) (briefly outlining general rule). OEC 802 provides that hearsay is generally inadmissible. There are specific rules providing for hearsay exceptions, OEC 803 and OEC 804, and hearsay exclusions, OEC 801(4).

In *Pulver*, which involved merchandise stolen from a retailer, we concluded that witness testimony about the asking price of the stolen goods, obtained from observing the price tag, is not hearsay. 194 Or App at 425. More specifically, the defendant was convicted of theft in the second

degree for stealing two pairs of athletic shoes from a Fred Meyer store. *Id.* At trial, the state called a security guard as a witness, and he testified that he determined the value of the shoes by examining their price tags and by scanning their UPCs or universal product codes. *Id.* The defendant objected to that testimony on hearsay grounds, and the trial court overruled the objection. *Id.* On appeal, we affirmed and explained that

> "to prove the market value of stolen wholesale or retail property in a theft prosecution, the state must establish the value of the property in trade, not the value placed on property by its owner. The asking price of an item is relevant to market value because—at least in a wholesale or retail market—it ordinarily reflects the price at which the item will probably be sold. In other words, the item's price provides *prima facie* proof of its value, not because the seller so asserts, but because the asking price is itself a basis from which to determine its value in trade."

*Id.* at 427. We continued by explaining that "the shoes' prices, as revealed by the price tags and the scans of the UPCs, were not out-of-court assertions of the fact to be proved, but were themselves direct evidence of the relevant fact." *Id.* at 428. The security guard's testimony communicating the price information, which was based on his personal observations of the price tags and results of scanning the UPCs, when offered to establish the market value of the stolen items, was therefore not hearsay. Thus, in the case of stolen merchandise, evidence about the market value—which was not hearsay in *Pulver* given the purpose for which it was offered—may be offered by a witness testifying about the price at which the retailer offered to sell the merchandise.

Our reasoning in *Pulver* is equally applicable here. To establish first-degree criminal mischief under ORS 164.365(1)(a)(A), the state must prove that the defendant damages or destroys property of another "[i]n an amount exceeding $1,000." The value of property damage can be established with evidence of repair or replacement costs. *See State v. Crace*, 26 Or App 927, 932, 554 P2d 628 (1976) (observing in the context of a first-degree criminal mischief appeal that, "although damage to personal property is generally measured by the difference between its value

immediately before and after the injury, an alternative measure is the reasonable cost of repairs to put the property in substantially the same condition it was in prior to the injury"). Further, market value is one way to measure repair or replacement costs. *See State v. Aguirre-Rodriguez*, 367 Or 614, 621, 482 P3d 62 (2021) (explaining that "Oregon has long followed the principle that market value can be an appropriate measure for the reasonable cost of replacement or repairs" for purposes of determining economic damages).

Here, the state used the repair and replacement costs as evidence of the damage to the victim's property. The victim testified to the visible damage to the door and doorjamb. He further testified that he went to Lowe's and received three estimates to repair the damage to the door and doorjamb, which included replacing the doors. Based on the information that he received and observed during his visit to Lowe's, the victim testified to what he understood the value of the repair and replacement costs would be for the damage to his property. Like the price tags and UPCs in *Pulver*, the Lowe's estimate in this case is direct evidence of the market value of the victim's repair and replacement costs and is, therefore, not hearsay. That is, the state did not have to prove what Lowe's believed the value of the damaged property was, which would have been hearsay. Rather, the victim's testimony provided evidence of the repair and replacement costs for the damaged door based on his knowledge and observations from his visit to Lowe's.

Defendant argues that it is "beside the point" whether "the victim had read the price tags of those three proposed doors all by himself" because the "critical, unanswerable question is whether the proposed doors were equivalent in value to the victim's door or whether they were superior doors," which he could not do without cross-examining the Lowe's employees. We reject that argument. Here, the state elected to prove the value of damages by relying on the market value of the repair and replacement costs, which can be established by the price to replace and repair the damage that is obtained from a business, like Lowe's, that is in the relevant market to provide those parts and services. *See State v. Dillard*, 312 Or App 27, 28, 490 P3d 176 (2021) ("In the case of merchandise stolen from a retailer, market

value may be proved by evidence of the price at which the retailer offered to sell the merchandise. That is because such evidence tends to show the value of the merchandise in trade." (Citation and internal quotation marks omitted).). Once those market prices have been introduced as evidence, they constitute *prima facie* evidence of the value of the damage "because the asking price is itself a basis from which to determine its value in trade." *Pulver*, 194 Or App at 427. And, at that point, defendant was free to challenge the state's *prima facie* case and attempt to create reasonable doubt as to the value of the damage. *See Dillard*, 312 Or App at 30 (explaining that "a defendant can urge a jury to have doubt about a *prima facie* case on the ground that the items stolen may or may not have been available at discount, and, in the face of such an argument, a jury might well have reasonable doubt about whether to find that the regular prices represent what the items could have been sold for").

Accordingly, we reject defendant's argument that the trial court erred in overruling his hearsay objections and further conclude that the trial court did not err in denying his motion for judgment of acquittal based on the value of the damaged property. In this case, the victim's testimony provided the market value of the repair and replacement costs for the damage to the door and doorjamb, not what Lowe's believed the repair and replacement costs of the damage should be, and that evidence was sufficient to withstand a motion for a judgment of acquittal based on the value of the damaged property.

Two issues remain. First, the state concedes that under *State v. Ulery*, 366 Or 500, 501, 464 P3d 1123 (2020), the trial court plainly erred when it accepted a nonunanimous guilty verdict on Count 1 and when it instructed the jury that it could return nonunanimous guilty verdicts. As to the remaining counts, which the jury reached by unanimous guilty verdicts, the state contends that the latter error was harmless beyond a reasonable doubt. We accept the state's concession as to the attempted first-degree burglary verdict (Count 1), and exercise our discretion to correct the error for the reasons stated in *Ulery*. *Id*. at 504. We therefore reverse and remand that count for a new trial. We further conclude that defendant's remaining arguments regarding

the nonunanimous jury instruction as to the counts that were unanimous are foreclosed by *State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020), *cert den*, ___ US ___, 141 S Ct 2837 (2021).

Finally, with respect to defendant's sixth assignment of error, the state concedes that the trial court plainly erred in imposing court-appointed attorney fees without first determining whether defendant had the ability to pay them. In this case, however, we need not address defendant's argument and the state's concession concerning the imposition of court-appointed attorney fees because we are remanding for resentencing. *See State v. Wilson*, 309 Or App 577, 578-79, 483 P3d 58 (2021) (declining to reach a challenge to the imposition of court-appointed attorney fees in a similar situation).

Judgment of conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.