The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 19, 2026

## 2026COA17

**No. 24CA0096, *People v. Bolden* — Crimes — Theft — Evidence of Value**

The severity of a theft conviction depends on the value of the stolen items.  In this retail theft case, a division of the court of appeals holds that while the discounted sale price of stolen merchandise is some evidence of its value, the sale price does not establish value as a matter of law.

Court of Appeals No. 24CA0096
Douglas County District Court No. 22CR1092
Honorable Jane A. Tidball, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Byron A. Bolden,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE HARRIS
Dunn and Moultrie, JJ., concur

Announced March 19, 2026

Philip J. Weiser, Attorney General, Cata A. Cuneo, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Jeffrey C. Parsons, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant

¶ 1    The severity of a theft conviction depends on the value of the stolen items: The offense is a misdemeanor if the value of the items is less than $2,000, but it is a class 6 felony if the items have a value of $2,000 or more but less than $5,000.  *See* § 18-4-401(2)(e)-(f), C.R.S. 2025.

¶ 2    Defendant, Byron A. Bolden, was convicted of felony theft based on a jury's finding that he and a co-defendant stole items from a retail store valued at more than $2,000.  On appeal, he contends that because the stolen items were on sale on the day of the theft, the evidence was insufficient to sustain his felony conviction, and that the trial court erred by failing to give his tendered jury instructions concerning the valuation of the stolen items.  We affirm.

## I.    Sufficiency of the Evidence

¶ 3    A person commits theft "when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization . . . and . . . [i]ntends to deprive the other person permanently of the use or benefit of the thing of value." § 18-4-401(1)(a).

¶ 4     The value of the thing taken — "whether regarded as an element or an enhancer" — "is part of 'the offense charged,'" *People v. Simpson*, 2012 COA 156, ¶ 20 (quoting §§ 16-5-301(1)(a), 18-1-404(1), C.R.S. 2025), and must be proved beyond a reasonable doubt, *People v. Vidauri*, 2021 CO 25, ¶ 14.  Generally speaking, to satisfy this burden, the prosecution must present competent evidence of the reasonable market value of the item at the time of the theft.  *People v. Jaeb*, 2018 COA 179, ¶ 40.  "Market value is what a willing buyer will pay in cash to the true owner for the stolen items."  *Id.*

¶ 5     Bolden does not dispute that he is guilty of theft.  He acknowledges that he and his co-defendant put merchandise in their shopping carts and then left the store without paying for the items.  But he says that, as a matter of law, the fair market value of stolen retail merchandise is its discounted sale price, not its full retail price.  Here, everyone agrees that, at the time of the theft, the discounted sale price of the stolen items totaled $1,856.19.  According to Bolden, because a willing buyer would have paid the sale price on the day of the theft, the prosecution necessarily failed

to prove that the value of the stolen items at the time of the offense was at least $2,000.

¶ 6     The problem with that argument is that price does not definitively establish value in retail theft cases.  Under section 18-4-414(1), C.R.S. 2025, "when theft occurs from a store, evidence of the retail value of the thing involved shall be prima facie evidence of the value of the thing involved."  Evidence of retail value includes "affixed labels and tags, signs, shelf tags, and notices."  *Id.*

¶ 7     Thus, even accepting that some of the stolen items were on sale on the day of the theft, the discounted sale price would, at best, merely constitute prima facie evidence of value.  "Prima facie evidence is evidence sufficient to establish a given fact and which, *if not rebutted or contradicted*, will remain sufficient."  *People v. Anadale*, 674 P.2d 372, 373 n.3 (Colo. 1984) (emphasis added).  In other words, the price tag is sufficient evidence of value, but it is not dispositive in that it can be rebutted by the opposing party's evidence.  *People v. Schmidt*, 928 P.2d 805, 807-08 (Colo. App. 1996) (explaining that section 18-4-414 "allows an accused to rebut the presumption of value" by calling a witness "to establish a value other than that specified on the price tag").

¶ 8     Bolden's argument would hold up only if the statute said something different: that evidence of the price of the thing at the time of the theft *is dispositive of the value* of the thing involved.  But that is not what the statute says, and we must apply the statute as written.  *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12.

¶ 9     Accordingly, we conclude that while the discounted sale price is evidence of value, it does not establish value as a matter of law.

¶ 10    Courts in other jurisdictions have reached the same conclusion.  In *Keeton v. State*, for example, the defendant argued that because the stolen items were on sale on the day of the theft, the sale price, not the retail value assigned to the items for inventory purposes, "established the fair market value . . . as a matter of law."  774 S.W.2d 716, 717 (Tex. App. 1989), *aff'd*, 803 S.W.2d 304 (Tex. Crim. App. 1991).  The court of appeals rejected that argument, in part because if that were the rule, "it would be impossible to buy an item below its fair market value."  *Id.*  Instead, the court concluded that evidence of the sale price was "some evidence of the property's fair market value," as was the retailer's inventory price, and how much weight to assign to the conflicting evidence was up to the trier of fact.  *Id.*

¶ 11    The court in *State v. Dillard* rejected the defendant's similar claim that the prosecution had failed to prove that the value of stolen merchandise was over $1,000 because the merchandise might have been on sale on the day of the theft.  490 P.3d 176, 179 (Or. Ct. App. 2021).  The court held that the price generated by the universal product code (UPC) was prima facie evidence of value but that the defendant could offer evidence or argument that the regular prices did not represent the items' fair market value.  *Id.* Still, the court noted that even when there is evidence of a temporarily discounted price, a jury could "infer that an item could have been sold, and probably would have been sold, at its regular price," such that the regular price better reflects the value of the stolen item.  *Id.*; *see also Morris v. State*, 334 P.3d 1244, 1248-49 (Alaska Ct. App. 2014) (an item's retail price is prima facie evidence of its market value, but evidence of retail price could be rebutted by evidence that a seller customarily sold the item at a discount); *State v. Dixon*, 947 N.W.2d 563, 577 (Neb. 2020) ("[T]he price at which an item is offered for sale" is relevant, but not conclusive, evidence of the item's market value.); *Commonwealth v. Hanes*, 522 A.2d 622, 628 (Pa. Super. Ct. 1987) (retail price is prima facie evidence of

value of stolen merchandise, but a defendant can present rebuttal evidence that the seller customarily sold the property at a discount, and the fact finder must weigh the competing evidence and determine value as a matter of fact). Bolden has not pointed us to any case, and we have not found one, supporting his position that the temporarily discounted price on the day of the theft is, as a matter of law, the value of a stolen item.

¶ 12    The question, then, is whether the prosecution presented sufficient evidence to support the jury's finding that the value of the stolen merchandise was at least $2,000.

¶ 13    When a defendant challenges the sufficiency of the evidence to sustain a conviction, we review the record de novo to determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable jury that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Harrison*, 2020 CO 57, ¶ 32. In conducting that review, we give the prosecution the benefit of every reasonable inference that could fairly be drawn from the evidence. *Thomas v. People*, 2021 CO 84, ¶ 10. We may not reweigh the

6

evidence or substitute our judgment for that of the jury. *People v. Strickler*, 2022 COA 1, ¶ 11.

¶ 14 The evidence presented at trial established that the stolen merchandise likely had competing labels or tags. According to the retailer's loss prevention manager, she identified fifteen stolen items from surveillance video of Bolden's and his co-defendant's shopping carts. Each of those items had a UPC affixed to it that generated the regular retail price of the item — what the manager called the "ticket price." She added up the "ticket prices" of the identifiable items in the two carts to arrive at a total value of the stolen merchandise of $2,094.98. The manager's testimony was prima facie evidence of the value of the stolen items. *See* § 18-4-414(1); *People v. Pearman*, 209 P.3d 1144, 1146 (Colo. App. 2008) (loss prevention officer's testimony as to tagged price of stolen retail items at the time of the theft was sufficient to establish value for felony theft conviction).

¶ 15 But the manager also conceded that a few of the items were on sale on the day of the theft, and, presumably, they had tags showing the sale price. She acknowledged that if Bolden and his co-defendant had "purchased all of the items" on the day of the

theft, "they would have paid a different amount than the $2,094" ticketed price — they would have paid $1,856.19.  That evidence, too, would be sufficient to establish the merchandise's value or to create doubt as to the prosecution's valuation.  *See Dillard*, 490 P.3d at 179.

¶ 16     The jury, therefore, was presented with conflicting evidence of the value of the stolen merchandise.  How much weight to give to the UPC or "ticketed" price versus the one-day discounted sale price was for the jury to decide.  "It is the fact finder's role to weigh the credibility of witnesses, to determine the weight to give all parts of the evidence, and to resolve conflicts, inconsistencies, and disputes in the evidence."  *People v. Poe*, 2012 COA 166, ¶ 14.

¶ 17     On this record, "a jury could reasonably find th[e] [nondiscounted ticket] prices indicative of value or reasonably reject them as indicative of value."  *Dillard*, 490 P.3d at 179.  And "[w]here reasonable minds could differ, the evidence is sufficient to sustain a conviction."  *People v. Carlson*, 72 P.3d 411, 416 (Colo. App. 2003).

## II.    Jury Instructions

¶ 18    Bolden contends that the trial court erred by rejecting two tendered jury instructions concerning the valuation of the stolen merchandise.

### A.    Standard of Review

¶ 19    We review jury instructions de novo to determine whether they accurately inform the jury of the governing law. *McDonald v. People*, 2021 CO 64, ¶ 54. If they do, we "review the trial court's decision to give (or not give) a particular jury instruction for an abuse of discretion," *People v. Paglione*, 2014 COA 54, ¶ 45, which occurs if the court's decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law, *People v. Melara*, 2025 COA 48, ¶ 16.

¶ 20    Even if we discern an error, we will not reverse if the error was harmless — that is, if there is no reasonable probability that the error contributed to the defendant's conviction. *People v. Trujillo*, 2018 COA 12, ¶ 12.

### B.    Speculation Instructions

¶ 21    The stolen items were not recovered. The loss prevention manager said that, after the theft, she was able to identify some,

9

but not all, of the stolen items by viewing security camera footage of Bolden's and the co-defendant's shopping carts as they moved through the store. She testified that she only provided UPC pricing information for the fifteen items she could identify.

¶ 22 Bolden asked the court to give two instructions cautioning the jury against accepting "speculative" evidence of value.

¶ 23 The first said that "[e]stimates, speculation, assumptions, conjecture, or guesses are insufficient evidence of the value of items."

¶ 24 The second said that

> [t]he prosecution has the burden of proving beyond a reasonable doubt the value of the item(s) involved in a theft. Your determination of value cannot be based on guessing, speculation, or conjecture. After considering all of the evidence, if you are not firmly convinced of the value, then the prosecution has failed to meet their burden.

¶ 25 The trial court rejected the instructions, concluding that the cases Bolden cited did not support giving the instructions and that because both parties had presented competent evidence of value "down to the cent," the proposed instructions were unnecessary.

¶ 26    On appeal, Bolden argues that the instructions were necessary to prevent the jury from assigning a random value to the unidentified "items that may have been in the shopping cart" for which the prosecution presented no evidence of valuation. For a few reasons, we disagree.

¶ 27    First, while the language from the instructions might be an accurate statement of the law, no case suggests that the court should have imported that language into a jury instruction. *See, e.g.*, *People v. Espinosa*, 2020 COA 63, ¶ 15 & n.1 (noting that "crafting jury instruction language by quoting from case law" is "generally an unwise practice," "particularly . . . when the language from which the jury instruction is crafted does not come from a case involving a jury instruction issue" (citation omitted)).

¶ 28    Second, the proffered instructions' concepts were incorporated in a separate instruction. *See People v. Grenier*, 200 P.3d 1062, 1080 (Colo. App. 2008) ("[I]t is unnecessary to give an instruction that is encompassed by other instructions provided by the court."). Instruction No. 16 informed the jury that "the prosecution ha[d] the burden to prove the value of the thing involved beyond a reasonable doubt" and that the jury should consider "all the evidence" in

11

determining whether the prosecution had met its burden. There was no evidence presented about the unidentified items or their value.

¶ 29     Third, the abstract language of the instructions did not fit the circumstances of the case because, as the trial court noted, both parties had presented competent and detailed evidence of the merchandise's value. *See Castillo v. People*, 2018 CO 62, ¶ 34 ("The trial court 'should not instruct on abstract principles of law unrelated to the issues in controversy . . . .'" (citation omitted)).

¶ 30     The jury's question during deliberations — "Can we consider the unidentified items in the cart as circumstantial evidence?" — does not affect the analysis. The question is too ambiguous to show that the jury thought it could randomly assign value to the unidentified items in the carts, and even if that was the import of the question, Bolden's generic instructions were unlikely to have averted the inquiry. (Whether the court should have given either of

the proffered instructions in response to the jury's question is not an issue raised on appeal, so we do not address it.)[1]

¶ 31 For these reasons, we perceive no error in the court's refusal to give the tendered speculation instructions.

## C. Valuation Instruction

¶ 32 Bolden also requested an instruction that provided as follows:

> The value of items which are stolen is their reasonable market value at the time of the taking. The reasonable market value is the amount a willing buyer would pay to the true owner for the stolen item(s) at the time of the commission of the alleged offense.

¶ 33 The court rejected this instruction because the cases Bolden cited as authority did not involve retail theft or jury instructions or suggest that, in any kind of theft case, courts should instruct the jury on "reasonable market value."

---

[1] The trial court responded to the jury's question as follows: "During the trial, you received all of the evidence and instructions that you may properly consider in deciding this case." To the extent Bolden intended to raise an independent claim concerning the court's response to the question, the claim is too undeveloped to warrant review. *See People v. Relaford*, 2016 COA 99, ¶ 70 n.2 (declining to review a claim of error that was not "supported by any analysis or supporting authority").

¶ 34    On appeal, Bolden contends that the lack of an instruction on reasonable market value allowed the jury "to ignore the dispositive evidence of retail market value" — i.e., the discounted sale price — and to instead accept the retailer's ticket price as the value of the items. That argument fails for several reasons.

¶ 35    First, the premise is flawed. As we have explained, the price of an item, whether its full retail price or its discounted sale price, is not dispositive of its value — it is merely some evidence of value.

¶ 36    Second, and relatedly, the instruction was unnecessary. There was no real dispute about the correct *measure* of value: Both sides presented evidence of what the stolen items were worth — i.e., their fair market value — on the date of the theft. Bolden's opening brief acknowledges as much. In reciting the testimony at trial, he says that the prosecution called the loss prevention manager "to testify as to the items identified as stolen and the retail fair market value of those items," and that she testified that the "retail fair market value of the items" in the shopping carts was $2,094.98. The dispute centered on *how to determine* the items' fair market value. The prosecution's position was that the items were worth the full retail price; the defense's position was that the items were worth

14

the discounted sale price. An instruction defining value as "reasonable market value" would not have helped the jury determine whether the items were worth $2,094.98 or $1,856.19.

¶ 37 And third, setting all of that aside, the court correctly noted that no authority supported giving the instruction and that courts should avoid formulating a jury instruction using language from case law. *See Espinosa,* ¶ 15 & n.1. Under these circumstances, the court's decision to reject the proffered instruction did not "exceed the bounds of the rationally available choices." *People v. Palacios,* 2018 COA 6M, ¶ 18 (explaining the standard for finding an abuse of discretion).

¶ 38 Here, too, the jury's other question — "Can we consider wholesale price of items taken?" — does not compel a different result.[2] If anything, the question suggests that the jury understood that it had to determine the fair market value of the items and that, in determining value, it was not bound by the prosecution's evidence of regular retail price.

---

[2] The trial court gave the same response to this question: "During the trial, you received all of the evidence and instructions that you may properly consider in deciding this case."

### III. Disposition

¶ 39 The judgment of conviction is affirmed.

JUDGE DUNN and JUDGE MOULTRIE concur.